**STATE of Missouri,
Plaintiff-Respondent,**

v.

**Marvin COTTON, Defendant-Appellant.**

**No. 42126.**

Missouri Court of Appeals,
Eastern District,
Division Four.

May 26, 1981.

Motions for Rehearing and/or Transfer to Supreme Court Denied July 10, 1981.

Application to Transfer Denied
Oct. 13, 1981.

Linda R. Allan, Asst. Public Defender, Clayton, for defendant-appellant.

John Ashcroft, Atty. Gen., Nancy D. Kelley, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

SIMON, Judge.

Defendant appeals from his conviction of Burglary Second Degree and Stealing. We affirm.

Defendant contends the trial court erred (1) in allowing the trial to proceed in defendant's absence; (2) in refusing to grant

a mistrial when a state's witness testified that a co-participant had confessed; (3) in failing to discharge a juror and grant a mistrial upon discovery that the juror had participated in a conversation with William J. Shaw, Public Defender of the 21st Judicial Circuit; (4) in allowing the state to submit evidence of defendant's flight; and (5) in refusing to accept defendant's plea of guilty.

Since the defendant does not attack the sufficiency of the evidence, our discussion of the fact shall be confined only to those facts concerning defendant's points of error.

■■■ Defendant's first point is that the trial court erred in proceeding with the trial in his absence. On March 20, 1979 the jury for defendant's trial was chosen and sworn. The trial judge ordered a recess for the remainder of the day and instructed the defendant to return at 9:30 a. m. on March 21, 1979 to proceed with trial. When defendant did not appear by 10:30 a. m. on March 21, the court issued a capias warrant for his arrest. Two deputy sheriffs sent to execute the warrant testified at a hearing in chambers concerning the results of their efforts to locate the defendant. Each of the deputies testified that their efforts were unsuccessful. The only evidence of defendant's whereabouts came from the testimony of Charles Satchell, one of the deputies. He testified that he had spoken to defendant's father who informed him that, according to defendant's girlfriend, defendant had "gone someplace with some friends to see a doctor or something because he had piles." The deputies did not talk to the girlfriend. The trial court ruled that the defendant voluntarily absented himself and denied a request by defendant's counsel for a continuance or, in the alternative, a mistrial.

As defendant recognizes in his brief, a defendant in a criminal case may waive his right to be present at trial by voluntarily absenting himself from the proceedings. When a defendant is free on bond and does not appear at the time specified, it is presumed, until established otherwise, that his absence is voluntary for the purpose of deciding whether he has waived his right to be present at trial. *State v. Drope*, 462 S.W.2d 677, 681 (Mo.1971); *State v. Whites*, 538 S.W.2d 70, 73 (Mo.App.1976). The presumption of voluntariness of the defendant's absence was not overcome and we shall not disturb the trial court's ruling.

■■■ Defendant's second point is that the trial court erred in failing to grant a mistrial when Detective Payne testified that Rudolph Churchman, a co-participant to the crime, had confessed. Churchman was being tried separately. The alleged error occurred during cross-examination of Detective Payne by defendant's counsel within the following context:

Q. At that time, did you and patrolman Warren have any information as to their (defendant and Churchman) participation in an actual burglary?

A. Yes, sir.

Q. Okay. What information did you have?

A. That the subject was carrying this pillowcase that was full of these items and they had dropped it.

Q. Okay, but did anybody actually see these individuals in or out of the house?

A. Not to my knowledge at that time.

Q. At this time, has there been information anybody saw them go in and out of the house?

A. Churchman admitted to it. That is the knowledge that I—

At that point, defendant's counsel asked permission to approach the bench and then requested a mistrial, which was denied. There was no request that the trial court instruct the jury to disregard the answer. Defendant contends that he was prejudiced and that a mistrial should have been granted because Detective Payne's testimony is not responsive to the question, is inadmissible hearsay, and is a violation of the defendant's right to confront witnesses against him. This contention cannot be sustained.

Mistrial is a drastic remedy to be granted within the sound discretion of the trial court only in extraordinary circumstances. *State v. Morgan*, 592 S.W.2d 796, 808 (Mo. banc 1980). The prejudicial effect upon the jury of such matters as an unresponsive and voluntary answer on cross-examination is for the trial court to determine, it being in a better position than an appellate court. *State v. Cage*, 452 S.W.2d 125, 129 (Mo. 1970). Here, we cannot say as a matter of law, that the trial court abused its discretion in refusing to declare a mistrial on the basis of this isolated volunteered statement. The statement was not elicited nor exploited by the state. In addition, the evidence of defendant's guilt is strong and convincing and it is doubtful that the detective's remark had any effect upon the jury verdict.

A witness testified she lived behind the home of the victim and that on the evening of the alleged burglary she observed two men running out of the victim's backyard. One of the men was carrying a pillowcase which was filled with something. After calling the police she continued to watch the two men, and observed them passing the pillowcase between themselves. The two men then walked up the street and stopped at a telephone pole, leaving the pillowcase next to the pole. As the men continued up the street, the witness saw the police stop them. The two men were later identified as the defendant and Rudolph Churchman. The pillowcase contained items which the victim identified as the items taken from his home. Following defendant's arrest, and search of his person, the police recovered a sealed envelope containing money and addressed to the victim from the defendant's pocket.

Detective Payne's remark that a co-participant had confessed adds little to the other properly admitted evidence and thus does not have the devastating effect urged by defendant. We therefore rule this point against defendant.

■ Concerning his third point, defendant contends that juror No. 12, Frederick Seiller, should have been discharged and a mistrial granted when the trial court discovered that the juror had a conversation with William Shaw, Public Defender of the 21st Judicial Circuit, prior to being impanelled and sworn as a juror in defendant's case. Mr. Shaw testified out of the juror's presence, that on the day of the jury selection for defendant's trial, he was eating lunch in a restaurant and was seated at a table with a woman and another man. While engaging in a general conversation the woman asked if Mr. Shaw's office was trying anything. Mr. Shaw explained that Mr. Larrew, an assistant public defender, was trying a case wherein the defendant wanted to plead guilty but the court would not accept the plea. Mr. Shaw did not mention the defendant's name in the conversation. Mr. Shaw also stated that he explained the meaning of an "Alford" plea to the man sitting with them. At the close of the conversation, the man turned and Mr. Shaw noticed his juror button. Mr. Shaw apologized and told the man he did not realize the man was a juror, and that if he was assigned to Judge Lasky's court he would have to disqualify himself and inform the judge of their conversation. While defendant's trial was in progress, Mr. Shaw visited Judge Lasky's courtroom and identified juror No. 12 as the man with whom he had the conversation. The juror was voir dired in chambers where he stated, in substance, that he recalled having a conversation with Mr. Shaw, but did not recall Mr. Shaw mentioning any names. He did, however, recall Mr. Shaw mentioning "there were a couple of murder cases coming up." The juror did not recall any conversation regarding guilty pleas. In addition, the juror denied any familiarity with the names, evidence or circumstances of the case on which he was sitting. He did not feel that any of the conversation would effect his judgment in the case. He further denied discussing any of the conversation with the other jurors, except on return from lunch, he did mention to other veniremen that "there were a couple of murder cases coming up."

Mr. Willie Moore, the court bailiff, testified out of the juror's presence, that he had overheard juror No. 12 trying to "place" Mr. Shaw while speaking to the other jurors. Mr. Moore stated that juror No. 12 had indicated to other jurors that he "recognized" Mr. Shaw and that he was trying to remember whether it was Tuesday or Wednesday when he had seen him.

In reviewing this point, we must keep in mind that the competency of a juror is particularly a matter for the determination of the trial court. A ruling of the trial court in this regard should not be reversed unless the court has clearly abused its discretion. *State v. Allen*, 485 S.W.2d 28, 31 (Mo.1972). We find that the trial court was most cautious in resolving this question and did not abuse its discretion in so doing. The juror was questioned at length by both defendant's counsel and the state. The facts as adduced show that there was not the slightest doubt in the juror's mind that the conversation would in any way effect his competency as an impartial trier of fact. Nothing in the record indicates that juror No. 12 was not being truthful in his rendition of the conversation with Mr. Shaw. In fact, the record indicates that the trial judge could have believed both Mr. Shaw and juror No. 12. Their testimony was not contradictory.

Defendant makes much of the fact that during the initial voir dire, when the veniremen were asked if anyone either knew or had any dealings with William Shaw or anyone in the Public Defender's Office, Mr. Seiller remained silent. The paramount consideration with incidents of this nature is whether or not the inaccurate statement or, as in this case, the failure to respond, was intentional. Where the juror obviously attempts to conceal the truth, prejudice to the defendant is more easily presumed. *State v. Hudson*, 508 S.W.2d 707, 710 (Mo. App.1974). The trial judge, who was in a position to view the juror's demeanor during the questioning, chose to believe him. We find nothing in the record which would indicate that the juror's failure to respond involved bad faith, deception or was otherwise intentional. The trial court did not abuse its discretion.

Defendant next contends that the trial court erred in allowing the state to submit evidence of defendant's flight. The evidence to which defendant refers is a stipulation read by the trial judge to the jury which stated, in substance, that the defendant did not appear in court at the time specified; that a capias warrant was issued and two deputies were sent to arrest defendant and bring him to court; and that after a diligent search defendant could not be found. Defendant claims the trial court's error is twofold in that this evidence amounts to evidence of an unrelated crime and is tantamount to an improper comment on defendant's failure to testify. We find these claims without merit.

The general rule regarding flight evidence is that it is relevant and admissible as indicating consciousness of guilt. Flight may occur from the scene of the crime or elsewhere if it is in order to avoid arrest or prosecution. Remoteness of flight in space and time from the scene and time of the alleged crime goes only to the weight of the evidence and not to its admissibility. *State v. Rutledge*, 524 S.W.2d 449, 458 (Mo.App. 1975). Evidence of defendant's voluntary failure to appear at trial is evidence tending to show flight and thus was properly admitted. See *State v. Blitz*, 171 Mo. 530, 71 S.W. 1027 (1903).

Defendant also claims that because the evidence of flight was admitted while he was absent from trial, he was prejudiced in that he was not afforded an opportunity to offer explanatory evidence. It is true that defendant was entitled to offer an explanation of his flight had he chosen to do so. *State v. Campbell*, 533 S.W.2d 671, 676 (Mo. App.1976). Defendant voluntarily chose not to be present however, and thus has waived his right.

Defendant's final contention is that the trial court abused its discretion in refusing to accept defendant's plea of guilty after a showing of voluntariness had been made. The trial court conducted an examination of the defendant before allow-

ing him to enter his plea of guilty. The trial court explained to the defendant all the rights he was waiving and supplied him with other necessary information to be sure that any decision made would be made intelligently, knowingly and voluntarily. The defendant then entered his plea of guilty. The trial court then asked the defendant if he did or did not commit the crime. Defendant replied that he did not commit the crime. The court then informed the defendant that the plea would not be accepted if defendant did not commit the crime. Following a short recess, defendant asked the court to reconsider and to proceed with an *"Alford"* plea. The request was denied, the admission of guilt was withdrawn by the judge, and a plea of not guilty was entered.

Defendant claims that in not accepting his *"Alford"* plea, the trial court denied him his "right" to plead guilty. Appellant relies heavily upon *North Carolina v. Alford*, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970). In *Alford*, the defendant urged that his guilty plea should not have been accepted under the circumstances. The United States Supreme Court was confronted with the issue of whether a guilty plea can be accepted when accompanied by protestations of innocence thereby amounting to a waiver of trial with no admission of guilt. The court held that the trial judge did not commit error in accepting such a plea where the defendant's decision was intelligently made and in view of the strong factual basis for the plea demonstrated by the state. 400 U.S. at 37–38, 91 S.Ct. at 167–168. Furthermore, the court in footnote 11 of its opinion, made it clear that it was not holding that a defendant has a constitutional right to have such a plea accepted.

It is well settled that an accused has no constitutional right to have a plea of guilty accepted. *Santobello v. New York*, 404 U.S. 257, 262, 92 S.Ct. 495, 498, 30 L.Ed.2d 427 (1971); *State v. Lankford*, 565 S.W.2d 737, 739 (Mo.App.1978). An *"Alford"* plea is a guilty plea and therefore, there is no right to have such a plea accepted. The trial court did not abuse its discretion in refusing

to accept the *"Alford"* plea. Defendant's point is without merit.

The judgment is affirmed.

SATZ, P. J., and SMITH, J., concur.