**STATE of Missouri, Plaintiff/Respondent,**

v.

**Darrion WILLIAMS,
Defendant/Appellant.**

No. 60125.

Missouri Court of Appeals,
Eastern District,
Division Two.

Dec. 3, 1996.

Motion for Rehearing and/or Transfer to Supreme Court Denied Jan. 30, 1997.

Application to Transfer Denied
Feb. 25, 1997.

Deborah B. Wafer, District Defender, St. Louis, for plaintiff/respondent.

Jeremiah W. (Jay) Nixon, Attorney General, Christine M. Blegen, Assistant Attorney

General, Jefferson City, for defendant/appellant.

PUDLOWSKI, Judge.

Appellant appeals his conviction for possession of heroin, § 195.202, RSMo 1994, and possession of cocaine, § 195.202, RSMo 1994, obtained in the Circuit Court of St. Charles County. Appellant was sentenced to two consecutive ten-year terms of imprisonment. We hold that probable cause existed and the original detainment of appellant was, therefore, an arrest. As a result, the subsequent search of appellant was a legal search incident to arrest. Accordingly, there existed sufficient evidence to support the trial court's denial of appellant's motion to suppress. We hold further that the State (Respondent) presented sufficient evidence at trial from which reasonable jurors could conclude that appellant was guilty of possession of heroin. Lastly, we hold that appellant had no constitutional right to have his *Alford* plea accepted by the trial court and that the court did not abuse its discretion by refusing to accept it. The judgment is affirmed.

On February 26, 1990, Detective Paul West received an anonymous telephone call at the St. Charles Police Department. West was a former member of the St. Charles County multijurisdictional enforcement group, known as the "MEG unit," which specialized in narcotics investigations. Detective William Bowman (Bowman) was, at the time, the deputy commander of that unit. West took down the information provided by the caller and then drove to the location that housed the MEG unit. He met with the MEG unit officers and advised them of the information that he had received. While West was conferring with Bowman and other MEG unit officers, a second telephone call was forwarded to him. Based on the information received during the second telephone call, West, Bowman and other MEG officers began surveillance at an apartment complex off of Harry S Truman Boulevard. The caller indicated that appellant would be leaving the residence at 2208 Trails of Sunbrook between 3:30 and 5:00 p.m. The caller stated that appellant would enter a red 1989 Suzuki with Illinois plates and would be en route to East St. Louis with some heroin and rock cocaine. According to the caller, additional narcotics could be found inside the residence. The caller also stated that appellant is sometimes armed.

At approximately 4:20 p.m. on that day, a red Suzuki left the apartment complex and proceeded southbound on Harry S Truman Boulevard toward Interstate 70. As Officer Bill Wilcox, who was driving a marked patrol car, approached the Suzuki, the driver made an abrupt right-hand turn into the parking lot of an Amoco gas station. The Suzuki had been in the left-hand lane of the southbound portion of Harry S Truman Boulevard and crossed both lanes of southbound traffic to make the turn into the Amoco parking lot. The driver failed to signal before making the turn. Wilcox pulled into the parking lot behind the Suzuki and activated the lights on his patrol car. West pulled up alongside of Wilcox. Wilcox then ordered the driver, later identified as the appellant, out of the car. He then frisked the appellant for weapons. While searching appellant, Wilcox located a clear bag containing pink and white capsules, later determined to be heroin. He placed the capsules back into appellant's pocket, handcuffed him and placed him in the patrol car.

Shortly thereafter, Bowman arrived at the Amoco station. Wilcox informed Bowman that he had found the capsules on appellant's person. At that time, West, Wilcox and Bowman, went to the patrol car to seize the capsules from appellant. The capsules, however, were no longer on appellant's person but were found by Wilcox between the seat and the back rest on the driver's side of the back seat, where appellant had been sitting. Appellant told Bowman that his name was "Darrion Williams" and his address was 2208 Trails of Sunbrook, the same address which had been under surveillance that day.

Bowman conducted a field test on one of the capsules and the substance tested positive for heroin. Later testing at the St. Charles County Sheriff's Department confirmed that the substance in the capsules was heroin. A pager and $995 in cash were also seized from the appellant's person after his arrest.

West later obtained a search warrant and searched appellant's apartment. West found rock and powder cocaine, as well as an Ohaus triple beam scale and empty gel capsules. A blender with cocaine residue and two bottles of Inositol powder, commonly used to cut cocaine, were also found in the kitchen. Baking soda, which is commonly used to put cocaine in rock form, was also found. The office manager of the apartment complex confirmed that appellant lived at that address, as did several letters addressed to, and phone calls made to, the appellant.

At trial, the state and the appellant arranged a plea agreement whereby if the appellant entered a guilty plea, he would be sentenced to seven years. Appellant later entered an *Alford* plea and the trial court refused to accept it. Appellant then proceeded to trial.

At the close of the evidence, instructions and arguments of counsel, the jury found appellant guilty of possession of heroin and cocaine. Prior to trial, the court had found appellant to be a prior and persistent offender. Appellant was sentenced to two consecutive ten year sentences.

■ In appellant's first point, he asserts that the trial court erred in overruling his motion to suppress and admitting the evidence of heroin seized from him. Appellate review of a ruling on a motion to suppress is limited to determining whether the evidence is sufficient to support the trial court's ruling. *State v. Burkhardt*, 795 S.W.2d 399, 404 (Mo. banc 1990). In reviewing the trial court's ruling on a motion to suppress, the facts and any reasonable inferences arising therefrom are to be stated most favorably to the order challenged on appeal. *State v. Blankenship*, 830 S.W.2d 1, 14 (Mo. banc 1992). Evidence that contradicts that order is to be disregarded. *State v. Hutchinson*, 796 S.W.2d 100, 104 (Mo.App. S.D.1990).

■ Appellant raises three different arguments in support of his assertion that the trial court erred in denying his motion to suppress. In his first argument, appellant asserts that the respondent presented insufficient evidence at the motion hearing to find that police had knowledge of specific and articulable facts sufficient to create a reasonable suspicion that appellant had committed or was committing a crime or to support probable cause for an arrest. He argues further that Bowman's testimony at the hearing was insufficient to carry the respondent's burden of proof. We find that probable cause existed to arrest appellant when he was searched at the Amoco station. As a result, the search was a legal search incident to arrest. An arrest is justified only when there exists probable cause to believe that a person is committing or has committed a crime. *United States v. Espinosa*, 782 F.2d 888, 891 (10th Cir.1986). The determination of probable cause depends on the specific facts and circumstances of each case and no specific test exists which can be readily applied. *State v. Wiley*, 522 S.W.2d 281 (Mo. banc 1975). Probable cause may be based on the hearsay of an anonymous informant "so long as the informant's statement is reasonably corroborated by other matters within the officer's knowledge" and there is a substantial basis for crediting the hearsay. *Id.* quoting *Jones v. United States*, 362 U.S. 257, 269, 80 S.Ct. 725, 735, 4 L.Ed.2d 697 (1960), *overruled on other grounds.*

Looking at the evidence presented at the motion hearing, we find that the information received by West from the anonymous caller was sufficiently corroborated to create probable cause. Bowman was with West when he received the second phone call and they corroborated the information together. Their surveillance of 2208 Trails of Sunbrook discovered only one red Suzuki with Illinois plates at the address. After receiving appellant's name, Bowman received confirmation from McDermmitt that the DEA had intelligence information on appellant that he was trafficking heroin and cocaine in East St. Louis, St. Louis County and St. Charles County. As foretold by the informant, the appellant left the apartment between 3:30 and 5:00 and got into the Suzuki with Illinois plates. Appellant left the apartment and headed toward Interstate 70, which was consistent with the information that he would be going to East St. Louis. Furthermore, upon seeing the marked police car, appellant took evasive action by abruptly crossing two lanes of traffic to make a fast, sharp turn into the Amoco station. This evasive action "alone

will not provide probable cause for an arrest, but may be a consideration, and in some cases may provide the key ingredient, justifying a decision to take action." *State v. McKeehan,* 894 S.W.2d 216, 220 (Mo.App. S.D.1995). We find that the corroboration of some of the information of the anonymous phone call along with the evasive action taken by the appellant provided probable cause for the arrest. As a result, the evidence found on appellant was found legally through a search incident to arrest and was admissible. Bowman was with West when he received the second phone call and they corroborated the information together. Bowman, therefore, had sufficient personal knowledge to testify at the motion hearing. Accordingly, we find that the trial court's ruling on the motion to suppress was supported by substantial evidence.

For his second argument in his first point, appellant argues that the initial search at the Amoco station was more akin to a *Terry* stop[1] than a search incident to arrest, and the search exceeded the permissible scope of a *Terry* stop. As we stated above, we find that probable cause existed to arrest appellant at the Amoco station. The search, therefore, was a legal search incident to arrest.

For his third argument in his first point, appellant argues that since the search at the gas station was illegal, the evidence later seized at his apartment was inadmissible because the search warrant was obtained, in part, due to evidence seized during the alleged illegal search. As we have stated above, the search at the Amoco station was a legal search incident to arrest. The evidence discovered at the station and later at his apartment was, therefore, admissible. Appellant's first point is denied in whole.

In his second point, appellant argues that the trial court erred in failing to grant appellant's motion for judgment of acquittal. Appellant claims that the evidence was insufficient as a matter of law and the testimony of some witnesses was too contradictory and inconsistent to be credible.

In assessing the sufficiency of the evidence, we view the evidence and all reasonable inferences to be drawn therefrom in the light most favorable to the verdict. Evidence and inferences contrary to the verdict are to be ignored. *State v. Grim,* 854 S.W.2d 403, 405 (Mo. banc 1993), *cert. denied,* 510 U.S. 997, 114 S.Ct. 562, 126 L.Ed.2d 462 (1993). We look only to whether there is sufficient evidence from which reasonable persons could have found the appellant guilty beyond a reasonable doubt. *State v. Dulany,* 781 S.W.2d 52, 55 (Mo. banc 1989). We find that sufficient evidence was adduced at trial from which reasonable jurors could have found the appellant guilty beyond a reasonable doubt. Furthermore, appellant requests this court to weigh the evidence and determine the credibility of witnesses, a task generally reserved for juries. *See generally, State v. Jeffries,* 858 S.W.2d 821, 823, (Mo. App. E.D.1993), *State v. Vinson,* 833 S.W.2d 399, 403 (Mo.App. E.D.1992). The appellant urges us to invoke the destructive contradictions rule. Under the rule, evidence will be disregarded where the contradictions are "so diametrically opposed to one another as to preclude reliance thereon and rob the testimony of all probative force." *State v. Kuzma* 745 S.W.2d 700, 702 (Mo.App. W.D.1987), *quoting State v. Newberry,* 605 S.W.2d 117, 121 (Mo.1980). We find that the inconsistencies in the evidence alleged by the appellant do not invoke the destructive contradictions rule. The credibility of witnesses and the weighing of the evidence, therefore, is to be left to the jury. Point two is denied.

In point three, appellant asserts that the trial court abused its discretion in refusing to accept appellant's guilty plea solely because it was made pursuant to *North Carolina v. Alford,* 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1971). An *Alford* plea allows the court to accept a guilty plea from a defendant, while the defendant maintains his innocence. Due to the overwhelming weight of the evidence, however, the defendant chooses to plead guilty. *Id.* Our court has recognized, however, that the Supreme Court of the United States, in *Alford,* made it clear that a defendant has no constitutional right

1. *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20    L.Ed.2d 889 (1968).

**334**

to have a guilty plea accepted, whether or not it is made pursuant to *Alford. State v. Cotton,* 621 S.W.2d 296, 301 (Mo.App.1981). In *Cotton,* the defendant entered a guilty plea and the trial court then asked the defendant if he committed the crime. The defendant denied committing the crime. The court then advised the defendant that the plea would not be accepted if the defendant did not commit the crime. The defendant then entered a guilty plea pursuant to *Alford.* The trial court refused to accept the plea and entered a plea of not guilty. This court found that the trial court did not abuse its discretion in doing so. Similarly, we find that the trial court did not abuse its discretion in refusing to accept appellant's guilty plea solely because it was made pursuant to *Alford.* The original plea agreement was made with the intention that the appellant was entering a guilty plea, thereby admitting his guilt and taking responsibility for his actions. A subsequent guilty plea pursuant to *Alford* eliminates any showing of remorse or taking of responsibility by the appellant. As we have stated, this court has determined that appellant has no constitutional right to have such a plea accepted. Point three is, therefore, denied.

Judgment affirmed.

CRANE, P.J., and SMITH, J., concur.