**STATE of Missouri, Respondent,**

v.

**Alphonso JONES, Appellant.**

**No. 70651.**

Missouri Court of Appeals,
Eastern District,
Division Three.

Nov. 4, 1997.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Jan. 8, 1998.

Application for Transfer Denied
Feb. 24, 1998.

Nancy L. Vincent, Asst. Public Defender, St. Louis, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Fernando Bermudez, Asst. Atty. Gen., Jefferson City, for respondent.

CRANDALL, Judge.

Defendant appeals from the judgment entered after a jury found him guilty of murder in the first degree and armed criminal action. Defendant was sentenced to life imprisonment without parole for the murder conviction and a concurrent term of life imprisonment for the armed criminal action conviction. We affirm.

We review the evidence in the light most favorable to the verdict. *State v. Shurn*, 866 S.W.2d 447, 455 (Mo. banc 1993).

In the early afternoon of January 12, 1994, Tyree Johnson was walking on Highland Avenue in the City of St. Louis. Johnson saw defendant and the victim on the north side of the street. After walking past the two men, Johnson looked back and saw the men getting into a "white jeep." This vehicle was later identified as a 1977 white GMC Jimmy. Johnson continued walking until he heard gunshots and saw the "jeep" crash into a fence. Johnson saw a person get out of the passenger side of the vehicle. Although Johnson could not see this person's face, he would testify that the person was wearing the same clothing that he had seen defendant wearing. Johnson found the victim lying in the vehicle.

On January 12, 1994, Shawn Davis was visiting Jimmy Jackson at his house located on Highland.[1] Davis heard a "strange noise" and looked out the window. Jackson heard "some bangs" and also looked out the window. Both men saw that a "truck" had run into a fence. They also saw defendant, who was wearing a green sweatshirt, get out of the passenger side of the vehicle, look around and then leave the area. Davis walked over to the vehicle and saw a person "slumped over" inside the vehicle. Davis called the police. Johnson did not know Davis or Jackson prior to January 12, 1994.

The victim was shot six times. The following day an individual called St. Louis police and stated that the person responsible for the victim's death was named "Squirt." The caller stated that this person was "a black male about eighteen to twenty years old, five foot seven to five foot nine, medium build and his girlfriend lives at 4750 Cupples and she

---

1. During his testimony, Jimmy Jackson stated that he prefers to be called Gary Sykes which is the name his foster mother called him. Davis used the name Gary Sykes in his testimony.

didn't know the girlfriend's name."[2] A detective testified the caller would not identify herself. St. Louis detectives went to 4750 Cupples and knocked on the door but no one answered. On January 17, 1994, police received another call. The caller stated that "Squirt's" real name was that of defendant, Alphonso Jones, and he was at an apartment in St. Ann, Missouri. The caller again refused to identify herself. The detectives went to the St. Ann apartment identified by the anonymous caller and Kateena Mapp answered the door. She stated that she was the sister of defendant's girlfriend. While the detectives were talking with Mapp, defendant entered the apartment. Mapp told the detectives defendant had clothing in the bedroom closet and she consented to a search. The detectives seized a green sweatshirt from the closet. Defendant agreed to accompany the detectives to police headquarters. At some point, handcuffs were placed on defendant. Davis and Jackson identified defendant in separate line-ups. Johnson identified defendant from a photo array.

The jury was unable to reach a verdict at defendant's first trial and a mistrial was declared. At the second trial, the jury found defendant guilty of murder in the first degree and armed criminal action. Defendant was sentenced to life imprisonment without parole for the murder conviction and a concurrent term of life imprisonment for the armed criminal action conviction. This appeal followed.

Defendant argues in his first point that the trial court should have granted him a new trial on the basis of newly discovered evidence. To warrant a new trial based upon newly discovered evidence the defendant must show: (1) the evidence has come to the knowledge of the defendant since the trial; (2) it was not owing to want of due diligence that the evidence was not discovered sooner; (3) the evidence is so material that it would probably produce a different result at a new trial; and (4) the evidence is not cumulative or merely impeaches the credibility of a witness. *State v. Whitfield,* 939 S.W.2d 361, 367 (Mo. banc 1997). The trial court has substantial discretion in ruling on a motion for

new trial based upon newly discovered evidence. *Id.*

Six witnesses testified for defendant at a hearing on his motion. Geoffrey McNutt testified he spoke to defendant's uncle, Wesley Cotton, approximately two days after the shooting. According to McNutt, while he and Cotton were discussing defendant's arrest, Cotton said he killed the victim.

Erica Spottsville testified that while under the influence of alcohol Wesley Cotton "said he killed, he didn't say his name [referring to the victim in this case] but I knew who he was talking about...." She also testified that he made this statement a few months after the shooting.

Helen Morris testified she lives on Cupples Lane and, a policeman talked to her "right after it happened." She also testified that she saw the "truck" go through the fence "and the person I guess that shot him jumped out and ran." She testified further that defendant was not the individual she saw jump out of the truck and run.

Earlene Harper who is defendant's mother and Wesley Cotton's sister, testified other people told her Cotton committed the crimes. Harper stated that she told defendant's attorney for the first trial about this information but she did not know if her son knew of the allegations regarding Wesley Cotton. Harper also testified that after defendant's second trial, Wesley Cotton admitted he shot and killed the victim.

Vera Cotton who is Wesley Cotton's mother as well as defendant's grandmother, testified that she spoke to her son about the case. According to Ms. Cotton, she told her son to turn himself in if he was involved in the case and Mr. Cotton stated that if he turned himself in "they'll put a rope around my neck." Ms. Cotton also testified that her son made other incriminating remarks but never specifically admitted to committing the crimes.

One of defendants attorney's for the second trial, Wil Goldstein, testified that defendant's attorney from the first trial did not inform him of the allegations regarding Wes-

---

2. A detective testified that Cupples is the next street over from Highland.

ley Cotton until after the second trial. Goldstein also testified that this attorney stated defendant's family members informed him of the Wesley Cotton allegations prior to the first trial. Goldstein and defendant's attorney from the first trial both represented defendant at the second trial.

Here, the allegations regarding Wesley Cotton were conveyed to defendant's attorney at the latest during the first trial and clearly before the second trial. Earlene Harper stated that she told defendant's attorney for the first trial about the allegations regarding Wesley Cotton sometime during the first trial. Wil Goldstein testified that this attorney said defendant's family members told him of the Wesley Cotton allegations before the first trial. There was certain testimony regarding alleged statements made by Wesley Cotton after the second trial but these remarks were similar to those made prior to the second trial, namely that Wesley Cotton admitted committing the crimes or made incriminating statements regarding his involvement.

■ Defendant argues there was no evidence he personally knew of the Wesley Cotton allegations. We disagree. Defendant's family members knew of the allegations and it would not have been unreasonable for the trial court to conclude one of the family members told defendant about the allegations. In addition, one of defendants attorney's had knowledge of the allegations. *See* *State v. Salem*, 780 S.W.2d 683, 686 (Mo.App. 1989); *State v. Klaus*, 730 S.W.2d 571, 581 (Mo.App.1987). There was sufficient evidence that information regarding Wesley Cotton came to the knowledge of defendant prior to the second trial and therefore the trial court did not abuse its discretion in not granting a new trial.[3] Defendant's first point is denied.

In his second point, defendant argues that the trial court erred in denying his motion to suppress statements, identifications and evidence. Defendant contends that his arrest in

St. Ann, Missouri was improper because the St. Louis detectives did not have authority to arrest him outside of their jurisdiction.

■ A trial court's ruling on a motion to suppress will be affirmed if there is sufficient evidence to sustain it. *State v. Miller*, 894 S.W.2d 649, 651 (Mo. banc 1995). We defer to the trial court's evaluation of the credibility of witnesses and weight of the evidence. *Id.* "Police officers may make an arrest outside their territorial jurisdiction only upon the showing of the commission of a felony and reasonable grounds for probable cause." *State v. Sidebottom*, 753 S.W.2d 915, 923 (Mo. banc 1988).

■ Defendant asserts that the police lacked the requisite reasonable grounds to suspect him of committing the murder. In a similar argument, defendant argues in his third point that the police lacked probable cause for an arrest. The determination of probable cause depends on the specific facts and circumstances of each case and there is not a specific test that can be readily applied. *State v. Williams*, 937 S.W.2d 330, 332 (Mo. App. E.D.1996) (citation omitted). Probable cause may be based on the hearsay of an anonymous informant " 'so long as the informant's statement is reasonably corroborated by other matters within the officer's knowledge' and there is a substantial basis for crediting the hearsay." *Id.*

■ In the present case, defendant matched the description given to the detectives from the witnesses and the anonymous informant.[4] When agreeing to go to police headquarters, defendant told the detectives he knew and was a friend of the victim. The address of defendant's girlfriend first given by the informant, 4750 Cupples, was near where the crimes were committed and was in the same direction the witnesses stated the person had gone after exiting the white GMC Jimmy. There was sufficient corroboration for the anonymous informant's statements. Accordingly, there was sufficient evidence to

---

**3.** Defendant does not specifically address Morris' testimony on appeal. Regardless, she lived near the crime scene and spoke to police, and with due diligence this evidence could have been discovered sooner.

**4.** It is unclear whether the same person made both anonymous phone calls.

**834**

find probable cause for the arrest and defendant's third point is denied.[5] Likewise, there were reasonable grounds to suspect defendant committed the murder and therefore defendant's arrest in St. Ann, Missouri was proper. Defendant's second point is denied.

 In his fourth point, defendant argues the trial court erred in denying his motion to suppress because police illegally seized the green sweatshirt at the St. Ann apartment. "As a general rule, searches conducted without a search warrant are unreasonable and violate a defendant's Fourth Amendment rights." *State v. Garcia,* 930 S.W.2d 469, 472 (Mo.App. S.D.1996). In this case, the police detectives seized the sweatshirt without a warrant. However, a search conducted pursuant to a valid consent is constitutionally permitted. *Id.; State v. Bunch,* 787 S.W.2d 859, 861 (Mo.App.1990). A consent to search must be voluntary and not induced by fraud or coercion. *Id.*

When police arrived at the St. Ann apartment, Kateena Mapp answered the door. The detectives explained why they were there. Mapp signed a consent to search form and showed detectives the closet where defendant's clothes were located. Defendant does not suggest and there is no evidence that Mapp's consent was involuntary or induced by fraud or coercion.

 Defendant and his girlfriend both testified that defendant was living at 4167 Belle in the City of St. Louis in January 1994. The two also testified that Kateena Mapp lived at the St. Ann apartment where the sweatshirt was seized. Defendant testified that he stayed at the one bedroom apartment for four or five days prior to the day detectives went to the apartment. He also stated that Kateena Mapp, his girlfriend and two babies were also staying at the apartment. There is no evidence that defendant paid rent or had exclusive use of the bedroom or the closet where the sweatshirt was found. *See Bunch,* 787 S.W.2d at 861; *State v. Bryant,* 705 S.W.2d 559, 562 (Mo.App. 1986). When the consent to search a location is given by a third person, this person must retain access to or control over that room to give effective consent to the search. *Id.* Sufficient evidence existed that Kateena Mapp had authority to consent to the search. Defendant's fourth point is denied.

 Defendant argues in his fifth point that the trial court erred in overruling defense objections and admitting evidence that defendant allegedly made certain statements to a detective regarding defendant's sale of drugs. Defendant contends that the prosecutor's questioning was irrelevant, inflammatory, more prejudicial than probative and suggested uncharged criminal conduct. Defendant failed to raise this claim of error in his motion for new trial and therefore does not preserve the point for appellate review.[6] *State v. Shipley,* 920 S.W.2d 120, 122 (Mo. App. E.D.1996). Defendant's fifth point is denied.

Defendant raises five additional points. No jurisprudential purpose would be served by an extended written opinion and these points are denied. Rule 30.25(b).

The judgment of the trial court is affirmed.

AHRENS, P.J., and KAROHL, J., concur.

---

**5.** Defendant relies in part on the prosecutor's statement in chambers that the police "did not have probable cause until the arrest and line-up were made." However, this statement was not binding on the trial court.

**6.** Defendant's motion for new trial only claims error in the trial court's refusal to grant a mistrial. This is not the argument raised in defendant's point on appeal and defendant never asked the trial court for a mistrial. A claim of error in a motion for new trial must be reasonably consistent with the errors asserted at trial and on appeal in order to preserve it. *See State v. Pospeshil,* 674 S.W.2d 628, 632 (Mo.App. 1984).