

# Missouri Court of Appeals

## Southern District

### Division One

STATE OF MISSOURI, )
)
           Respondent, )
)
vs. ) No. SD37138
) Filed: February 17, 2022
COLE YOUNGER, )
)
           Appellant. )

APPEAL FROM THE CIRCUIT COURT OF BOLLINGER COUNTY

Honorable Alan J. Beussink, Judge

**<u>AFFIRMED</u>**

Cole Younger ("Younger") challenges his conviction, following a bench trial, of the class A misdemeanor of interfering with custody. In one point relied on, Younger argues that the trial court erred in rejecting his motion for judgment of acquittal at the close of all the evidence in that there was no substantial evidence that Younger knew he was removing D.A. from her father's custody, and knew that he had no legal right to do so. Finding no merit to Younger's point relied on, we deny the same and affirm the judgment of the trial court.

**Facts and Procedural History**

We recite the facts in accord with the principle that we view the evidence and its reasonable available inferences in the light most favorable to Younger's conviction. *State v. McCord*, 621 S.W.3d 496, 498 (Mo. banc 2021). We recite other information as necessary for context.

On October 26, 2020, Younger (a 17-year-old male) parked down the street from D.A.'s house sometime around midnight. D.A. (a 15-year-old girl) lived with her father, who had sole physical custody of D.A., pursuant to a dissolution from D.A.'s mother. D.A. snuck out of the house and walked to Younger's car. Younger drove D.A. around for several hours—when they returned to D.A.'s house, lights were on and D.A. told Younger that her father must have "caught" her. D.A. said that she was going to be in serious trouble with her father for sneaking out, so Younger agreed to drive D.A. to her mother's residence in California.

Younger first drove D.A. to Arkansas, where D.A.'s mother wired them $200 for gas, and promised to wire $600 more when the two were closer to California. Younger then drove to Kansas City, Missouri, where both Younger and D.A. began receiving numerous phone calls from friends and family, prevailing upon them to terminate the trip immediately. At this time, Younger told D.A. that it was a "bad idea" to keep going. D.A.'s father told her he would secure a motel room in Kansas City for her and Younger to spend the night. While the two were waiting for the motel room, police arrived, picked D.A. up, and she was returned to her father.

Younger was subsequently charged with the class A misdemeanor of interfering with custody, pursuant to section 565.150.[1] After a bench trial, the trial court found Younger guilty as charged, and sentenced him to a fine of $200 and $120.50 in court costs.

---

[1] All references to statute are RSMo Noncum. Supp. (2014).

This appeal followed. In his point relied on, Younger argues that the trial court erred in rejecting his motion for judgment of acquittal at the close of all the evidence in that there was insufficient evidence to demonstrate that "[Younger] knew that he was removing D.A. from the custody of [D.A.'s father] and was aware that he had no legal right to do so, as required to establish a violation of Section 565.150."

**Standard of Review**

> A court reviewing the sufficiency of the evidence in a court-tried criminal case is limited to ascertaining whether the State presented sufficient evidence from which a trier of fact could have reasonably found the defendant guilty. When conducting this review, the Court must examine the evidence and inferences in the light most favorable to the verdict, ignoring all contrary evidence and inferences.

*McCord*, 621 S.W.3d at 498 (internal quotations and citations omitted).

**Analysis**

Younger argues that there was insufficient evidence to support his conviction for interference with custody, in that the State failed to adduce sufficient evidence to demonstrate that Younger knew he was removing D.A. from her father's custody, and knew he had "no legal right" to interfere in the custody of D.A.

Section 565.150 sets forth the elements of the crime of interfering with custody, and in relevant part states: "A person commits the offense of interference with custody if, knowing that he or she has no legal right to do so, he or she takes or entices from legal custody any person entrusted by order of a court to the custody of another person or institution." § 565.150.1.

Younger specifically challenges that the State failed to demonstrate the requisite culpable mental state for this offense—*i.e.*, that Younger knew he had no legal right to interfere with the custody of D.A., and knew that he was interfering with D.A.'s custody. "Intent can be established by circumstantial evidence or inferred from surrounding facts. The necessary intent . . . [can be]

3

formed before or even during the incident." *State v. Williams*, 405 S.W.3d 592, 599 (Mo.App. S.D. 2013). Thus, intent "may be inferred from . . . defendant's conduct before the act, from the act itself, and from defendant's subsequent conduct." *State v. Thompson*, 538 S.W.3d 390, 393 (Mo.App. W.D. 2018) (internal quotations and citations omitted).

The record reflects that at around midnight on October 26, 2020, Younger parked down the road from D.A.'s house and waited for her to sneak out and walk to his truck. Younger drove around with D.A. for several hours, then returned her home—D.A. noticed lights on inside the house, and told Younger that her father must have "caught" her. When D.A. said that she would be in serious trouble with her father if she went inside, Younger agreed to drive D.A. to her mother's residence in California.

Younger drove D.A. to Arkansas, where D.A.'s mother wired them $200 for gas, and promised to wire an additional $600 once they were closer to California. Younger then drove D.A. to Kansas City, Missouri. D.A. and Younger received numerous calls from friends and family telling them to abandon the trip—Younger then told D.A. that continuing the trip to California was "a bad idea." From this, the trial court was free to infer that Younger was aware that he was not authorized to take D.A. from her father's custody, and only voiced concern when numerous other people found out what he was doing and pressured him into ending the trip.[2]

---

[2] Younger's brief directs us to two cases: *State v. Slavens*, 190 S.W.3d 410 (Mo.App. S.D. 2006) and *State v. Licata*, 501 S.W.3d 449 (Mo.App. W.D. 2016). We find those cases inapplicable to the instant facts as *Slavens* and *Licata* both dealt with a parent convicted of interference with custody as to their own children. Younger was not a parent of D.A., he had no blood relation to her, and certainly had no custodial rights to her. Indeed, Younger specifically testified to this effect at trial:

| | |
|---|---|
| [Prosecutor:] | [Y]ou know that [D.A. is] 15? |
| [Younger:] | Yes, I do. |
| [Prosecutor:] | You're not her father; is that right? |
| [Younger:] | No. |
| [Prosecutor:] | You don't have legal custody of her? |
| [Younger:] | No. |
| [Prosecutor:] | You don't have physical custody of her? |
| [Younger:] | No, ma'am. |

4

There was sufficient evidence to support Younger's conviction, and his point is accordingly denied.

The judgment of the trial court is affirmed.

WILLIAM W. FRANCIS, JR., P.J. - OPINION AUTHOR

JEFFREY W. BATES, J. - Concur

JACK A. L. GOODMAN, J. - Concur